May Term, 1852.

MANCHESTER
v.
DODDRIDGE.

---

### MANCHESTER and Another *v.* DODDRIDGE.

In disseizin, the statute of limitations in force when the suit was commenced and tried, governs the case.

A person in possession of land, with the consent of the owner, under a contract of purchase which is not completed, is a mere tenant at will.

Such tenancy determines by the death of the lessor.

The possession of one co-parcener, *eo nomine*, as co-parcener, is the possession of the others.

To establish an ouster, proof of an actual ouster is not necessary.

*A.* died in 1822, seized in fee of a tract of land in this state, leaving *B.*, his son, and *C.* and *D.*, the children of a deceased daughter, and others, his heirs at law. *B.* was, at that time, in possession of the land as a tenant at will. He continued in possession afterwards, claiming the land under the last will of *A.*, which turned out to be invalid, and made lasting and valuable improvements on the premises, under a constant claim of exclusive title, until his death, which occurred in 1841; after which his widow continued in possession of the land, it having been assigned to her in 1845 as her dower. The possession of *B.* and his widow had been quiet and undisturbed. *C.* was born in *December*, 1806, and *D.* in *December*, 1810, and they brought this suit against the widow of *B.* in *August*, 1847, for certain undivided shares of the land, as representatives of their mother. *Held*, that, under this state of facts, the jury was authorized to presume an adverse possession by *B.* of sufficient length, under the statute of 1846, to bar the action.

The verdict of a jury will not be disturbed on account of improper evidence having been admitted, if the other evidence admitted was sufficient to justify it.

Where the verdict is right, according to the evidence, it will not be examined whether the instructions given to the jury were correct.

*May Term, 1852.*

*MANCHESTER v. DODDRIDGE.*

ERROR to the *Wayne* Circuit Court.

BLACKFORD, J.—The plaintiffs in error brought an action of disseizin against the defendant in error for certain undivided shares. of real estate in *Wayne* county. The suit was commenced in *August*, 1847.

*Friday, May 28.*

Pleas—1st, not guilty; 2dly, the cause of action accrued more than twenty years next before the commencement of the suit.

Verdict and judgment for the defendant.

The facts relative to the plaintiffs' title are as follows:

The land in controversy originally belonged to one *Philip Doddridge*. He had, among other children, one daughter, named *Nancy*, who, in 1806, married one *Benjamin Manchester*. The plaintiffs are two of the children of that marriage. One of the plaintiffs, *James*, was born in *December*, 1806, and the other, *Isaac*, was born in *December*, 1810. The said *Nancy*, mother of the plaintiffs, died in *April*, 1813. The said *Philip*, grandfather of the plaintiffs, died in 1822. He, said *Philip*, at the time of his death, resided on the land, having the legal title to the same.

There can be no doubt of the plaintiffs' right, as heirs at law of *Philip Doddridge*, to recover in this suit, unless they are barred by lapse of time.

The facts relative to the defense of the statute of limitations are as follows:

Previously to 1818 (the precise time is not shown) said *Philip Doddridge*, being the owner and occupier of said land, made a verbal bargain respecting it with his son *John*. By that bargain, *John* let his father have other property in exchange for said land. In pursuance of that bargain, *John* removed to said land; he and his father occupying separate cabins on the same until his father's death.

The said *Philip Doddridge* left a last will; by which he devised said land to said *John;* but the devise was not valid, the will being attested by only one witness. There

were in the will several bequests of personal property, and said *John,* who was appointed sole executor, proved the will.

Soon after his father's death, *John* claimed the land as being devised to him; but the will being defective as aforesaid, he procured releases for their shares in the land from some of the heirs, but not from the plaintiffs.

After *John* came to reside on said land, and during his father's lifetime, he, *John,* cultivated, managed, and improved the land as if it were his own. In 1817, when *John* and his father were both living on the land, there were about 25 or 30 acres partially cleared and fenced. The said *Philip Doddridge* was then a feeble old man, and appeared to be maintained by *John.* At the time of *Philip's* death, there were about 40 acres of the land cleared. After *Philip's* death, *John* continued to occupy the land, and managed, and cultivated, and improved it as his own, and claimed it to be his own, until his death in 1841. There were, at the time of *John's* death, 80 or 90 acres of the land improved; the most of the improvements having been made by him. The rents and profits are worth from 140 to 180 dollars a year. The defendant is the widow of said *John,* and has remained in possession of the land since his death. This land was, in 1845, assigned to the defendant as her dower.

The statute of limitations of 1846 was in force when this suit was commenced and when it was tried. That statute, therefore, governs the case. *Nepean* v. *Doe,* 2 M. & W. 894. *Doe* v. *Millet,* 11 Adol. & Ell., N. S., 1048. It is as follows: " Every real, possessory, mixed, or other action for the recovery of any lands, tenements, or hereditaments, shall be brought or commenced within twenty years next after the right of entry upon or cause of action for such lands, tenements, or hereditaments, shall have accrued and not afterwards: Provided, that if at the time when such right of entry or cause of action shall first accrue, the person entitled thereto shall be within the age of twenty-one years, or out of the United States, insane, idiot, or a married woman, such person claiming

by, from, or under him or her, may bring an action at any time within five years from and after such disability shall cease or be removed." Acts of 1846, p. 95.

To see whether this statute applies to the present case, we must ascertain when the cause of action first accrued.

There was no adverse possession during the lifetime of *Philip Doddridge*, because it was with his consent, and under a contract, which was never completed, for the purchase from him, that his son *John* entered into possession. *John* was, under those circumstances, a tenant at will to his father. There is no doubt, says Baron *Parke*, that if there be an agreement to purchase, and the intended purchaser is, thereupon, let into possession, such possession is lawful, and amounts at law, strictly speaking, to a bare tenancy at will. *Doe* v. *Stanion*, 1 M. & W. 695.

Upon the death of *Philip Doddridge*, in 1822, his son *John's* tenancy at will was determined, and the land descended to said *John* and the plaintiffs, with some others, as the heirs-at-law of the deceased. The said *John* and the plaintiffs then became co-parceners. *John* being in possession at the death of his father, that possession was, *prima facie*, the possession of the plaintiffs, because the possession of one co-parcener, *eo nomine*, as co-parcener, is the possession of the others. If, however, there was an ouster of the plaintiffs by said *John*, a cause of action, in consequence of the ouster, accrued to the plaintiffs. There was no positive proof of an actual ouster, nor was such proof necessary. It was for the jury to say whether, from the length of time of *John's* sole occupation and that of the defendant under him, with the other evidence on the subject, they would presume that *John*, soon after his father's death, had ousted the plaintiffs. There is a case on this subject in which Lord *Mansfield* uses the following language: "It is very true that I told the jury, they were warranted by the length of time in this case, to presume an adverse possession and ouster, by one of the tenants in common, of his companion; and I continue still of the same opinion. Some ambiguity seems to have arisen

from the term *actual ouster*, as if it meant some act accompanied by real force, and as if a turning out by the shoulders were necessary. But that is not so. A man may come in by a rightful possession, and· yet hold over adversely without a title. If he does, such holding over, under circumstances, will be equivalent to an actual ouster." The judge said further—" The question then is, whether the possession in this case, after the death of *Stevens*, in the year 1734, that is, after the particular estate ended, was a possession as tenant in common, *eo nomine*, or adverse. It is a possession of near forty years, which is more than quadruple the time given by the statute for tenants in common to bring their actions of account if they think proper, namely, six years. But in this case no evidence whatsoever appears of any account demanded, or of any payment of rents and profits, or of any claim by the lessors of the plaintiff, or of any acknowledgment of the title in them, or in those under whom they would now set up a right. Therefore, I am clearly of opinion, as I was at the trial, that an undisturbed and quiet possession for such à length of time is a sufficient ground for the jury to presume an actual ouster, and that they did right in so doing." *Doe* v. *Prosser*, Cowper, 217.

There was in that case a possession of near forty years. It does not, however, follow but that the undisturbed possession of a co-parcener or tenant in common for a shorter period might raise a presumption of an ouster of his companion. Mr. *Preston*, in alluding to this subject, says: " It is also a rule of law that the seizin of one joint tenant is the seizin of his companions as well as of himself. The same rule is applied to co-parceners and tenants in common. The possession of one of them is constructively the possession of all; and hence it seems to follow, that possession or seizin of one will be the seizin of others as against all strangers; and the possession of one will constructively be held for the benefit of himself and of his companion. To disseize his companions there must be an actual ouster, or there must be such acts as are con-

structively equivalent to an ouster; as the denial of right to the rent of any part, or the possession of any part, of the land, *or an exclusive possession for a long time*, so as to afford the presumption of a disseizin. In modern times, the rule has been relaxed at some periods, and enlarged at other periods, in deciding on the point of ouster by one joint-tenant, tenant in common, or co-parcener, of his companions." 2 Preston on Abstracts, 291.

We are of opinion that, in the case before us, the quiet and undisturbed possession of *John Doddridge*, and, after his death, of the defendant, for about twenty-five years, that is, from soon after the death of *Philip Doddridge* until the commencement of this suit, taken in connection with the other evidence on the subject, authorized the jury to presume an ouster of the plaintiffs by their co-parcener, *John Doddridge*.

It must be considered, therefore, that the plaintiffs' cause of action accrued about twenty-five years before they brought their suit. At the time of the ouster, the plaintiffs were minors; but the eldest came of age about twenty years and the youngest about sixteen years before they brought the suit. According to the statute of limitations to which we have referred, actions like the present are barred where twenty years have elapsed after the cause of action accrued, and, in case of a disability, after the lapse of five years from the time the disability ceased. We must consider, therefore, that the evidence in this case shows that the plaintiffs were barred by the statute of limitations.

The judgment is objected to on the ground that the defendant was permitted to prove certain declarations of *John Doddridge* relative to the nature of his possession. But supposing the evidence of those declarations to have been inadmissible, their admission will not affect the case. The other evidence is sufficient to justify the verdict.

The judgment is also objected to on account of certain instructions given to the jury. But as we are of opinion that the verdict, according to the evidence, is right, it is not necessary to examine the instructions.

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Newman*, for the plaintiffs.

*J. Rariden*, for the defendant.