Nov. Term,
1855.

HENDRICK-
SON
v.
HENDRICK-
SON.

---

## HENDRICKSON *v.* HENDRICKSON and Others.

The declaration of emergency contemplated in section 28 of article 4 of the constitution of 1851, can not be taken by implication, but must be expressly declared in substantial conformity to the requirement of the constitution.

A declaration by the legislature that an act shall take effect on a future day specified, is not, of itself, a declaration of emergency, within the meaning of said section.

The publication and circulation of acts of the legislature, unless done "by authority," can not, under said section, affect the period of their taking effect.

The act regulating descents and the apportionment of estates, approved *May* 14, 1852, did not take effect until *May* 6, 1853.

*A.* died in *December,* 1852, seized in fee of land in this state. *Held,* that his widow was only entitled to dower in the land.

APPEAL from the *Bartholomew* Circuit Court.

STUART, J.— On the 22d of *August,* 1853, *Emily,* the widow of *John Hendrickson,* deceased, filed her petition for partition, making the children and heirs of her husband defendants.

The petition states that *John Hendrickson,* her late husband, died in *December,* 1852, intestate, leaving the plaintiff his widow, and the several defendants his heirs, (naming them). It is further alleged that he died seized of certain real estate, (describing several tracts of land). Among other things, it is stated that the revised statutes of 1852 were filed in the clerk's office of *Bartholomew* county on the 1st day of *May,* 1853. The plaintiff denies and disclaims any right of dower in the premises described in the petition, under the law of descents of 1852.

Nov. Term,
1855.

HENDRICK-
SON
v.
HENDRICK-
SON.

She states that she is advised she is entitled to one-third of said land in fee simple, the same not being worth 10,000 dollars, and that the defendants, the children and heirs of the said *John*, are entitled each to one-twelfth part of the remaining two-thirds thereof. Wherefore she prays partition, and that commissioners be appointed to allot and set off her one-third part in fee; and that she have such other relief as may be proper, &c.

Demurrer to the petition sustained, and judgment for costs against the petitioner. She appeals.

The act under which she seeks to be invested with one-third of her late husband's real estate, is chapter 27, 1 R. S., 248. It is entitled "an act regulating descents and the apportionment of estates," approved *May* 14, 1852. The 17th section provides that—"If a husband die, testate or intestate, leaving a widow, one-third of the real estate shall descend to her in fee simple, free from all demands of creditors; *provided*, however, that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only," &c.

The previous section, the sixteenth, abolishes tenancies by the curtesy and in dower. 1 R. S., 250.

The 44th section declares, that the act is to be in force from and after the 1st day of *August*, 1852. *Id.* 255.

It is claimed that this act was in force at the death of her husband, in *December*, 1852, and therefore contains the measure of her rights as his widow. And the course of reasoning is this: that declaring it in force from a day prior to the taking effect of the revised statutes of which it formed a part, was in the nature of and equivalent to a declaration of emergency.

The first inquiry will therefore be, whether the new act regulating descents was in force at her husband's death, in *December*, 1852.

If so in force, it must have been either by virtue of the emergency clause, or it must have been published in pursuance of the 44th section of the act, and circulated in the several counties prior to the 1st day of *August*, 1852.

Nov. Term,
1855.

HENDRICK-
SON
v.
HENDRICK-
SON.

The constitution, section 28, article 4, provides that— "No act shall take effect, until the same shall have been published and circulated in the several counties of this state, by authority, except in case of emergency; which emergency shall be declared in the preamble, or in the body of the law." 1 R. S., 53. It is hardly necessary to say that the declaration of emergency here contemplated could not be taken by implication; it must be expressly declared in substantial conformity to the requirement of the constitution. It is therefore obvious that declaring the act in force at a future day, as in this case on the 1st day of *August*, 1852, is no declaration of emergency, but simply fixing a distant period with a view of giving sufficient time for the act to be published and circulated by authority. So that the act regulating descents did not take effect on the first of *August*, 1852, by virtue of the emergency clause.

The only remaining question is, was the law of descents published by authority prior to *May* 6, 1853?

On the 9th of *June*, 1852, a joint resolution was approved, authorizing the secretary of state to publish and circulate, in pamphlet form, the railroad law, banking law, and several enactments therein named, and forthwith forward a copy thereof to each of the clerks of the Circuit Courts of the state. But the law of descents is not enumerated among the acts to be published; and of course was not authorized by that resolution. Laws of 1851-2, p. 178.

On the 18th of *June*, 1852, the act in relation to the printing and distribution of the laws, was approved. The first section provides, among other things, for the publication of six thousand copies of the local and special acts of the session of 1852. This is the volume from which we have just quoted the joint resolution, and in which the act of *June* 18, 1852, is contained. Laws of 1851-2, p. 126. The 10th section provides for the publication of the school and road laws in advance of the revision. But it is silent, and so is the whole act silent, in regard to the law of descents.

Nov. Term,
1855.

HENDRICK-
SON
v.
HENDRICK-
SON.

The 11th section is in these words: "That such general acts passed at the present session, as, in the opinion of the secretary of state, should not be embraced in the revised code, shall be printed and bound with the local and special acts in one volume, and shall be distributed in the manner and at the time now provided by law for the distribution of the general laws, and at as early a day as practicable." Laws 1851–2, p. 128. The law of descents is not embraced in the volume of local and special laws thus authorized to be published; and it is embraced and published in the first volume of the revised code. Chapter 27, p. 248. Thus has the secretary of state exercised the discretion vested in him by the eleventh section fully; and with its exercise, his discretionary power terminated. Any other species of publication, in pamphlet or otherwise, even if circulated in the several counties, was "without authority" and nugatory. The law of descents was therefore not published "by authority" till the 6th of *May*, 1853.

It follows that the act under the provisions of which she claims the one-third of her husband's real estate in fee, was not in force at his death, in *December*, 1852.

Her estate is therefore a life or dower estate under the old law. She is not entitled to a fee.

The petition being thus insufficient, the demurrer was correctly sustained.

*Per Curiam.*—The judgment is affirmed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the petition without prejudice, with leave to the petitioner to withdraw it from the files.

*W. Herod* and *S. Stansifer*, for the appellant.

*W. F. Pidgeon*, for the appellees.