Bowen *v.* Preston *et ux.*

***

## BOWEN *v.* PRESTON ET UX.

BILL OF EXCEPTIONS.—*Judge.—Presumption.*—Sixty days were given to file a bill of exceptions. The official tenure of the judge who tried the cause expired within twenty days. He signed the bill of exceptions, but when did not appear, although it was filed after the expiration of his term of office.

*Held,* that it should be presumed that he signed the bill before he ceased to be judge.

WIDOW.—*Descent.*—A widow takes real estate as heir of her husband when the latter dies seized, but she takes by virtue of her marital rights, under sec. 27 of the statute of descents, when the husband was seized in fee during the marriage, but died disseized, and she did not join in a conveyance of such real estate.

SAME.—*Dower.—Descent.—Statute of Limitations.*—The law in force at the death of the husband, when the inchoate claim of the wife in his real estate becomes consummate, is the measure of her rights. The Revised Statutes of 1852 abolished dower, and gave the widow a fee instead of dower; consequently the widow of a man whose title was divested before 1852, but who died after the revised statutes took effect, could not take a dower estate in such lands; nor could she take one-third in fee as against the husband's disseizor whose title had become complete by virtue of the statute of limitations before the statute of 1852 took effect. In such case the title of the disseizor was as complete against the wife as if the husband had conveyed before 1852 by a deed in which she did not join; but ordinarily the statute of limitations does not begin to run against the interest of a wife in her husband's lands until his death.

STATUTE OF LIMITATIONS.—*Title by.*—Twenty years adverse possession of real property not only bars the right of action, but it also confers as complete a title as a written conveyance.

SAME.—*Tenant in Common.—Adverse Possession.*—The possession of one of several tenants in common is in law the possession of all, and the statute of limitations does not run in favor of the tenant in actual possession; but the rule is otherwise when the latter disclaims the tenancy in common and asserts a different claim and an exclusive right.

From the Vanderburgh Circuit Court.

*A. P. Hovey, G. V. Menzies, W. F. Parrett,* and *L. Wood,.* for appellant.

*A. Iglehart* and *J. E. Iglehart,* for appellees.

BUSKIRK, C. J.—This was an action by the appellant against the appellees, to recover the possession of one-sixth of blocks seventeen, nineteen, and twenty in the city of Evansville.

The defendants answered by the general denial. There was a trial by jury, resulting in a verdict for the defendants.

The causes assigned for a new trial are :

1. The verdict is contrary to the evidence.

2. The verdict is contrary to law.

3. The court erred in giving instructions for the defendants numbered 1, 2, 3, 5, 6, 9, and 12.

4. For refusing to give instructions asked for by the plaintiff, marked C, F, G, and H.

5. Refusing to permit the plaintiff to read in evidence the copy of the deed from William R. Bowen and wife to Stewart Mollin, John Rankin, and Alexander Gallop.

The error assigned is based upon the action of the court in overruling the motion for a new trial.

The third, fourth, and fifth reasons for a new trial are relied upon, in argument, to reverse the judgment.

A brief statement of the case will aid in understanding the instructions given and those refused. On the 6th day of April, 1816, the government issued to Hugh McGary a patent for fractional section thirty, township six, range ten west.

In June, 1821, John Harrison, for the use of William R.

and Samuel S. Bowen, recovered, in the Vanderburgh Circuit Court, a judgment against the said Hugh McGary for the sum of seventy-seven dollars and eighty-six cents.

At the same term of court, William R. and Samuel S. Bowen obtained in said court a judgment against the said McGary for the sum of six hundred and forty-seven dollars and nine and one-half cents.

At the same term of said court, the said Bowens recovered another judgment against the said McGary for the sum of fifty-eight dollars and twenty-one cents.

On the 28th of June, 1821, executions were issued upon all of the above named judgments, for the principal, interest, and costs thereof, and were placed in the hands of the sheriff, who levied upon the lands in dispute, and by inquisition of twelve men ascertained the value thereof, and reported his doings thereon.

On the 8th day of August, 1821, writs of *venditioni exponas* were issued on said judgments to the said sheriff, who, by virtue thereof, on the 3d day of December, 1821, sold said lands to the said William R. and Samuel S. Bowen for one-half the appraised value, and on said day executed to the said Bowens a deed therefor.

The appellant was married to Samuel S. Bowen on the 6th of September, 1821, and lived with him as his wife until his death, which occurred on the 2d day of November, 1853.

On the 3d day of March, 1821, the said Hugh McGary executed a deed to Jonathan Anthony for the land in controversy, but Thomas J. Dobyns, claiming under such deed, was, by an action of ejectment brought by Mollin, Rankin, and Gallop, evicted of the premises in controversy, on the 18th of March, 1841.

It was agreed by the parties in open court, that the defendants, claiming under Stewart Mollin, John Rankin, and Alexander Gallop, have been in the quiet and undisturbed possession of the premises in controversy since May the 2d, 1825, claiming the same by hostile title.

The appellant offered to read in evidence a deed from William R. Bowen and wife to Mollin, Rankin, and Gallop, for the premises in controversy, dated May 19th, 1825, but the evidence was, upon the objection of the appellees, excluded.

It thus appears that both parties claim title under and through Hugh McGary.

The appellant claims that her husband, Samuel S. Bowen, by virtue of the sheriff's deed, became seized of one undivided half of the lands in controversy, and that her husband having been seized during marriage in fee simple, and she not having joined with him in the conveyance of such lands, she is entitled to one-sixth part thereof, by virtue of her marital rights.

The twelfth instruction given by the court, at the request of the appellees, and those designated as " F," " G," and " H," asked by the appellant and refused by the court, present the most important question in the case.   The twelfth instruction is as follows:

" If the jury believe from the evidence that the defendants and those under whom they claim have been in the actual, adverse, notorious, and hostile possession of the premises in controversy since 1825, the plaintiff is barred, and you should find for the defendants."

Instructions " F," " G," and " H " are as follows:

" F. If the jury find from the evidence that the plaintiff, Amanda W. Bowen, was the wife of Samuel Bowen in November, 1853, and said Samuel Bowen died intestate after the 6th day of May, 1852, leaving her as his widow without having conveyed the land by a deed or instrument in which she joined, they will find that she, as such widow, is entitled to one full third part in fee simple of the interest which said Samuel Bowen had and held in and to the premises described in the plaintiff's complaint during his coverture with said Amanda.

" G. If the jury find from the evidence that Samuel Bowen became seized in fee simple of the undivided one-half of the premises in controversy in 1821, by the deed from Alanson

Warner, sheriff of Vanderburgh county, to William and Samuel Bowen; and if they further find that said Samuel Bowen died intestate in November, 1853, having never conveyed his interest in said land, and that said plaintiff was, at the time of his death, his lawful wife, then the plaintiff is entitled to the full one-third part of his interest in and to said real estate in fee simple, being the one-sixth part of the real estate mentioned and described in the plaintiff's complaint.

" H. The jury can not find against the plaintiff upon the statute of limitations, unless they find that her husband, Samuel Bowen, departed this life twenty years before the commencement of this suit."

The question presented by the instruction given and those refused is one of very great importance, and has received very careful and thoughtful consideration. The case has long been under examination and advisement. The learned counsel have recently, at the request of the court, submitted additional briefs. But before we proceed to the consideration of the principal and controlling question in the case, we are required to pass upon a question, presented for the first time by counsel for appellees in their last brief, and that is, whether the bill of exceptions was properly executed and constitutes a part of the record. It is claimed by counsel for appellees that when Judge Laird signed the bill of exceptions he had ceased to be the judge of the Vanderburgh Circuit Court. The facts are these:

The motion for a new trial was overruled on the 29th day of November, 1872, and sixty days therefrom were given to settle and file a bill of exceptions. The bill was filed on the 14th day of January, 1873, but it does not appear from the record when it was signed by the judge.

On the 21st day of December, 1872, by an "act to amend the third section of an act, entitled 'an act districting the State for judicial circuits,' approved June 17th, 1852 " (Acts Special Session 1872, p. 21), Vanderburgh county was attached to the third judicial circuit, of which Hon. N. F. Malott was judge,

and so remained till the March following, when a new dis-tricting took place.

This act had an emergency clause, and took effect immediately.

If the record showed when the bill of exceptions was signed, we would be required to determine by which judge, Laird or Malott, it should have been signed; but as there were twenty days in which Judge Laird might have signed it before the change of circuits, we will presume that he signed it while he was judge of the Vanderburgh Circuit Court.

We proceed to summarize the facts. Hugh McGary became the owner of the land in dispute in 1816, deriving his title directly from the government. In 1821, William R. and Samuel S. Bowen became the owners by purchase at sheriff's sale on judgments against McGary. In 1825, Rankin, Mollin, and Gallop took possession of the premises, and they and their grantees have continuously held the adverse and exclusive possession of the same down to the commencement of this action. The statute of limitations commenced to run in 1825 against Samuel S. Bowen, and in 1845 it became a complete bar as to him. Samuel S. Bowen departed this life in 1853, after the statute of 1852 had taken effect. It is claimed by counsel for appellees that the appellant takes as the heir of her husband, and that whatever barred him would bar her. We concede the law to be that whatever bars the ancestor bars his heir, but it is very obvious that the appellant did not take any estate as the heir of her husband, for the plain reason that he did not die seized of the land in dispute. If the appellant is entitled to any estate in such lands, she acquires it not as heir of her husband, but by virtue of her marital rights under sec. 27 of the statute of descents. The widow takes as the heir of her husband, when the husband dies seized of the lands. The widow takes by virtue of her marital rights, under sec. 27, when the husband was seized in fee during the marriage, and died disseized, and she did not join in the conveyance. This question was very fully considered and elaborated by WORDEN, J., in delivering the opinion of the court, in May v. Fletcher, 40 Ind. 575.

We do not deem it necessary to re-examine the question, or review or cite the authorities bearing upon it. When Rankin, Mollin, and Gallop took possession, and when their title became perfect as against Samuel S. Bowen by disseizin, the appellant had an inchoate right of dower, but when her husband died the legislature had abolished dower, and had substituted therefor an estate in fee simple. It is firmly settled that the law in force at the death of her husband, when the inchoate claims of the wife become consummate, is the measure of her rights. *Ostrander* v. *Spickard*, 8 Blackf. 227; *Matlock* v. *Matlock*, 5 Ind. 403; *Whitsell* v. *Mills*, 6 Ind. 229; *Hendrickson* v. *Hendrickson*, 7 Ind. 13; *Noel* v. *Ewing*, 9 Ind. 37; *The Junction R. R. Co*. v. *Harris*, 9 Ind. 184; *Fletcher* v. *Holmes*, 32 Ind. 535; *May* v. *Fletcher*, 40 Ind. 575.

As we have seen, Samuel S. Bowen died while the statute of 1852 was in force. That statute abolished dower, and consequently his widow was not entitled to dower. That statute gave the widow one-third in fee, as the heir of her husband, of all lands of which he died seized, and one-third in fee of all lands of which he may have been seized in fee simple at any time during coverture, and of which he died disseized, or which he had conveyed, and in the conveyance of which she did not join. Samuel S. Bowen was seized of the lands in dispute during the coverture, and was disseized in 1845; and so, when the statute of 1852 took effect, he had been barred of all interest in the lands. The question is therefore presented, whether the appellant is entitled to one-third in fee of such lands. The question is not a new one in this court, but has been involved, considered, and decided in many cases where the husband had been seized during the coverture, and had conveyed without his wife joining in the conveyance; but the precise question presented for our decision is, whether the widow takes one-third in fee in a case like the present, where the husband was barred by the statute of limitations before the taking effect of the statute of 1852. This leads us to inquire, whether a title acquired by twenty years' adverse possession is as perfect and indefeasible as one acquired by a deed

of conveyance, and whether such title is as much entitled to protection, and is as free from the power of legislative interference as one acquired by deed. A concise and accurate statement of the law upon this point is made by Mr. Washburn in his work on Real Property, vol. 3, p. 145, foot page 514, where he states the law upon this point, in the language of the court by a quotation from the opinion of the court in *School District, etc.,* v. *Benson,* 31 Me. 381, 385. Mr. Justice WELLS, in delivering the opinion of the court in that case, says: " A legal title is equally valid when once acquired, whether it be by a disseizin or by deed; it vests the fee simple although the modes of proof when adduced to establish it may differ. Nor is a judgment at law necessary to perfect a title by disseizin any more than one by deed. In either case, when the title is in controversy, it is to be shown by legal proof, and a continued disseizin for twenty years is as effectual for that purpose as a deed duly executed. The title is created by the existence of the facts, and not by the exhibition of them in evidence. An open, notorious, exclusive and adverse possession for twenty years, would operate to convey a complete title to the plaintiffs, as much so as any written conveyance. And such title is not only an interest in the land, but it is one of the highest character, the absolute dominion over it, and the appropriate mode of conveying it is by deed." See cases cited in notes to sec. 48, p. 146.

According to the foregoing authority, Rankin, Mollin, and Gallop acquired in 1845, by disseizin, as against Samuel S. Bowen, the same title which they would have acquired by a conveyance from him, without his wife joining therein. If the legislature of 1852 had not abolished dower, the appellant would have been entitled to dower in such premises; for it is well settled, in accordance with sound principles and the manifest justice of the case, that an adverse occupation of the premises during the life of the husband will not affect the rights of the widow. She cannot be prejudiced by the *laches* of her husband in this particular, and the statute does not begin to

run against her claim for dower until after his death. 2 Scrib. Dower, 542, sec. 28 ; *May* v. *Fletcher,* 40 Ind. 575.

So, if Rankin, Mollin, and Gallop had acquired title by a deed from Bowen, his wife not joining with him, she would have been entitled to dower if the statute of 1852 had not abolished dower. But dower having been abolished and a fee substituted, the question here is, had the legislature the power to vest in the widow one-third in fee of the lands, the title to which was vested in Rankin, Mollin, and Gallop at the time when the statute of 1852 took effect.

In *Noel* v. *Ewing,* 9 Ind. 37, it was held, that the act of 1852 abolished dower and substituted a fee in the widow, in a case where the husband and wife married and acquired real estate before, and the husband died after, the taking effect of the act, seized of the lands.

In *Strong* v. *Clem,* 12 Ind. 37, this court adhered to the ruling in *Noel* v. *Ewing, supra,* upon this point, and went further, holding that where the marriage and seizin, as well as the conveyance by the husband, occurred before the taking effect of the act, and the death of the husband after, the widow took nothing ; dower being abolished, and the law enlarging the estate of the wife after the title of the purchaser had accrued being unconstitutional. This was based upon the ground that the title having vested in the purchaser prior to the taking effect of the act, the legislature could not divest his title to one-third of the estate and vest it in the widow. PERKINS, J., speaking for the court, says :

" Here, then, we have this case. In 1844, the husband owned the land in question. The entire fee was in him. He sold and conveyed that entire fee to the purchaser. That fee was then encumbered by the right of the wife to use one-third of the land for the period that she might outlive her husband, and nothing more. It was a mere contingency. If she deceased before her husband, then the entire fee remained in the purchaser unincumbered. Subsequently to this sale and purchase, the legislature enact that one-third of the fee so purchased, paid for, and vested in the purchaser, shall be divested out of

him and vested in the widow of the deceased grantor. And the question is, can the law be made to thus operate? It would seem that proposition was too plain for argument. Such a law takes the property of one person and vests it in another. It divests vested rights. It impairs the obligation of the contract of sale and purchase. It is plainly in conflict with the constitution, and, so far as it operates as above stated, is void."

The ruling in the above case has been adhered to and followed in the following cases: *Logan* v. *Walton*, 12 Ind. 639; *Giles* v. *Gullion*, 13 Ind. 487; *Frantz* v. *Harrow*, 13 Ind. 507; *Strong* v. *Dennis*, 13 Ind. 514; *Talbott* v. *Armstrong*, 14 Ind. 254; *Boone* v. *Tipton*, 15 Ind. 270; *Gaines* v. *Walker*, 16 Ind. 361; *Harding* v. *The Third Presbyterian Church*, 20 Ind. 71; *Galbreath* v. *Gray*, 20 Ind. 290; *Morton* v. *Noble*, 22 Ind. 160; *Harrow* v. *Myers*, 29 Ind. 469; *Fletcher* v. *Holmes*, 32 Ind. 497.

In *Harrow* v. *Myers*, *supra*, this court was asked to overrule the case of *Strong* v. *Clem*, *supra*, and all the cases following it; but the court refused to entertain the proposition, because it had become a rule of property, and ought not then to be disturbed. There is a much stronger reason now why it should not be overruled. The writer of this opinion concurs with his brethren, that we should adhere to such ruling, though he is thoroughly satisfied that such ruling was radically wrong, unsound in principle, and pernicious in its consequences; but to overrule it now would not repair the evil it produced, and would unsettle titles.

Counsel for appellants rely upon the cases of *Noel* v. *Ewing*, 9 Ind. 37; *Morton* v. *Noble*, 22 Ind. 160; *Fletcher* v. *Holmes*, 32 Ind. 497; *May* v. *Fletcher*, 40 Ind. 575. But in all of the above cases the fee simple title was in the husband at the time the statute of descents took effect, and they are therefore clearly distinguishable from the case of *Strong* v. *Clem*, and the subsequent cases adhering to such ruling.

We are of opinion that the court committed no error in

giving and refusing to give the instructions hereinbefore set out.

It is also insisted by counsel for appellant, that the court erred in excluding from the jury a deed from William R. Bowen and wife for the land in question, dated 19th of May, 1825, to Rankin, Mollin, and Gallop. It is claimed that the deed was admissible, for the purpose of showing that Rankin, Mollin, and Gallop derived their title from William R. Bowen, who was a joint owner with Samuel S. Bowen, and that such persons held the possession of said premises as tenants in common with Samuel S. Bowen, and that consequently the statute of limitations did not run against Samuel S. Bowen.

The law is thus stated by Preston: " It is also a rule of law that the seizin of one joint tenant is the seizin of his companions as well as of himself. The same rule is applied to coparceners and tenants in common. The possession of one of them is constructively the possession of all; and hence it seems to follow, that possession or seizin of one will be the seizin of others as against all strangers; and the possession of one will constructively be held for the benefit of himself and of his companion. To disseize his companions there must be an actual ouster, or there must be such acts as are constructively equivalent to an ouster; as the denial of right to the rent of any part, or the possession of any part, of the land, or an exclusive possession for a long time, so as to afford the presumption of a disseizin." See *Manchester* v. *Doddridge,* 3 Ind. 360; *Jenkins* v. *Dalton,* 27 Ind. 78.

" It was agreed by the parties, in open court, that the defendants claiming under Stewart Mollin, John Rankin, and Alexander Gallop, have been in the quiet and undisturbed possession of the premises in controversy since May the 2d, 1825, claiming the same by hostile title."

Now conceding, without deciding, that a conveyance from William R. Bowen and wife to Rankin, Mollin, and Gallop constituted them tenants in common with Samuel S. Bowen, the admission made upon the trial, before the deed in question was offered in evidence, conclusively shows that the possession

of Rankin, Mollin, and Gallop, and those claiming under them, had been exclusive and hostile to the said Samuel S. Bowen and all the world, from the 2d day of May, 1825, down to the commencement of the action, which was on the 9th day of July, 1872, a period of about forty years. Under such admission, the presumption of a disseizin could not be overcome by proof that Rankin, Mollin, and Gallop derived their title from William R. Bowen. The deed is in the record, and from it it appears that William R. Bowen and wife assumed to and, as far as they had the power, did convey the entire estate in, and title to, the land in controversy. This would rather tend to weaken than strengthen the presumption that the grantees were holding as tenants in common with Samuel S. Bowen. Construing the admission and the deed together, we cannot perceive how the appellant was injured by the exclusion of such deed.

There are other questions discussed by counsel, but as the conclusion which we have reached on the principal question is decisive against the right of the appellant to recover in this action, no useful purpose would be accomplished by considering and deciding them.

The judgment is affirmed, with costs.